McDonald, j.
12In this appeal, Qyntessa Biologies, L.L.C. (Qyntessa), and its sole member, Steve E. Moye, challenge a summary judgment against them and in favor of the Louisiana State University System Research and Technology Foundation (Foundation) and its subsidiary, LAETC Management Company, L.L.C. (LAETC). In rendering the summary judgment, the trial court determined the Foundation and LAETC were entitled to rescission of four consulting services agreements to which the Foundation, LAETC, and Qyntessa were parties, because Mr. Moye had fraudulently enticed the Foundation and LAETC into entering the agreements. For the following reasons, we affirm and remand.
FACTUAL AND PROCEDURAL BACKGROUND
The Foundation is a nonprofit Louisiana corporation with its principal office located at the Louisiana Emerging Technology Center (LETC) on the campus of Louisiana State University in Baton Rouge, Louisiana. The LETC serves small and start-up businesses focused on developing and commercializing university technologies. LAETC is a wholly-owned subsidiary of the Foundation and the property manager of LETC. From 2005 through 2008, pursuant to cooperative endeavor agreements (CEAs), the Louisiana Department of Economic Development (LDED) provided funds to LAETC to operate LETC and to subcontract with Qyntessa for the start up and operation of a clinical manufacturing facility (CMF) within the LETC. In turn, from July 2005 through June 2008, pursuant to four consulting services agreements (CSAs), the Foundation and LAETC paid Qyntessa $4,810,000 of the LDED funds for Qyntessa’s services in the design and construction of the CMF.[1] Qyntessa is a *471 limited liability company and Mr. Moye is its sole member. Additionally, from some time in 2002 through March 1, 2008, Mr. Moye was also a member of the Foundation’s board of directors.
In August of 2008, with concerns as to whether the LDED funds had been properly used, and after receiving less than full disclosure from Qyntessa, the Foundation and LAETC initiated a formal audit of Qyntessa’s records. Dissatisfied with | aQyntessa’s level of cooperation, in November 2008, the Foundation and LAETC filed a petition for audit and declaratory judgment against Qyntessa. Qyntessa answered the petition and filed a reconven-tional demand against LAETC for amounts allegedly due under the 2007 CSA.[2] Ultimately, the trial court issued a judgment declaring that the Foundation and LAETC were entitled to audit the records and accounts of Qyntessa as expressly authorized by the four CSAs. This court affirmed that judgment on appeal. Louisiana State University System Research and Technology Foundation and LAETC Management Company, L.L.C. v. Qyntessa Biologics, L.L.C., 09-1479 (La.App. 1 Cir. 4/15/10), 2010 WL 1509486 (unpublished opinion), writ denied, 10-1060 (La.9/3/10), 44 So.3d 692.
The Foundation and LAETC then hired an outside accounting firm, which conducted the Qyntessa audit beginning in 2010 and continuing through 2012. After receiving information from the audit, the Foundation and LAETC twice amended their petition, adding Mr. Moye as a defendant and asserting claims of breach of contract, intentional interference with contract and with the right to audit, unjust enrichment, detrimental reliance, fraud, and spoliation. Qyntessa and Mr. Moye answered the amended petitions and amended their reconventional demand to assert claims of defamation, libel, and slander against the Foundation and LAETC.[3]
In July 2013, the Foundation and LAETC filed a motion for summary judgment against Qyntessa and Mr. Moye, claiming they were fraudulently enticed into entering the four CSAs and seeking rescission of the CSAs, damages, and attorney fees. In support of their motion, the Foundation and LAETC submitted documentation indicating that over $2,900,000 of the $4,810,000 paid to Qyntessa under the four CSAs, amounting to 60 percent of the total sum paid, was used to pay Mr. Moye’s salary, personal expenses, and/or taken as profit. By way of illustration, the summary judgment evidence demonstrated that, from the funds paid to Qyntessa under the four |4CSAs, the following payments were made from Qyntessa’s account: Mr. Moye received $910,897.68 in salary; an interior decorator business, Beth Claybourn, was paid $176,121.07 for furnishings for Mr. Moye’s residence; a jeweler, Darakjian Jewelers, was paid $152,150 for a man’s watch; a jeweler, Shapur Mazaffarian Fine Jewelry, was paid $85,000; a men’s watch vendor, Tourneau, was paid $15,024; three home audio and entertainment vendors, Ne Plus *472 Ultra, Audio Resources, and Wilson Audio, were paid $92,207.50, $36,530, and $7,050.64, respectively; and two men’s clothing stores, George Bass and Stanley Korshak, were paid $17,489.05 and $20,745, respectively.
Qyntessa and Mr. Moye opposed the summary judgment, claiming they complied with the terms of the CSAs, were not prohibited from profiting by the terms of CSAs, nor required to disclose Qyntessa’s profit margin. Further, they argued that Qyntessa fulfilled all terms of the four CSAs without questions or concerns about the work it performed. Also, they submitted evidence showing that, during the three years the CSAs were in place, Mr. Arthur Cooper, the Foundation’s CEO and LAETC’s manager, never questioned, but instead approved, Qyntessa’s budget submissions, as evidenced by his monthly certifications to the LDED that LAETC’s cost reports and requests for reimbursement for the CMF contract were true and correct, had been actually incurred, and that reimbursements were due.
After a hearing, the trial court signed a judgment on December 6, 2013, granting the summary judgment in favor of the Foundation and LAETC, and stating:
(1) Mr. Moye had a duty to disclose to the Foundation and LAETC all material facts concerning the terms of the four Consulting Services Agreements with Qyntessa, and (2) the Foundation and LAETC were fraudulently enticed into entering into the four Consulting Services Agreements with Qyntessa and thus are entitled to rescission thereof as well as damages and attorney’s fees to be proven.
Qyntessa and Mr. Moye now appeal and contend the trial court erred in granting the summary judgment, because: (1) Mr. Moye had no duty to disclose all material facts concerning the terms of the four CSAs to both the Foundation and LAETC; (2) the evidence did not support a finding that Qyntessa and Mr. Moye fraudulently enticed the Foundation and LAETC into entering the CSAs; (3) the CSAs did not require Qyntessa to disclose its profits or payment of profits/draws to Mr. Moye; and (4) Mr. Moye did not | Ssubmit budgets containing inaccurate information and/or omitting pertinent information, as the record clearly shows the budgets were created with the assistance of Mr. Cooper.[4]
DISCUSSION
An appellate court reviews a trial court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment' is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B)(2);[5] George S. May International Company v. Arrowpoint Capital Corporation, 11-1865 (La.App. 1 Cir. 8/10/12), 97 So.3d 1167, 1171. Although summary judgments are now favored, factual inferences reasonably drawn from the *473 evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 00-2507 (La.12/8/00), 775 So.2d 1049, 1050. Because.it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material, for purposes of summary judgment, can be seen only in light of the substantive law applicable to the case. Gaspard v. Graves, 05-1042 (La.App. 1 Cir. 3/29/06), 934 So.2d 158, 160, writs denied, 06-0882 and 06-0958 (La.6/16/06), 929 So.2d 1286 and 1289. The substantive law applicable in this case is the law of conventional obligations, or contracts, found in Title IV of Book III of the Louisiana Civil Code.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. LSA-C.C. art. 1906. A contract is formed by the | (¡consent of the parties established through offer and acceptance. LSA-C.C. art. 1927. Consent to a contract may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. In this case, the trial court found that the Foundation’s consent in entering into the 2005 CSA with Qyntessa, and LAETC’s consent in entering into the 2006, 2007, and 2008 CSAs with Qyntessa, was vitiated by Mr. Moye’s fraud. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. LSA-C.C. art. 1953. Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. This exception does not apply, however, when a relation of confidence has reasonably induced a party to rely on the other’s assertions or representations. LSA-C.C. art. 1954. Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent. LSA-C.C. art. 1955. See Shelton v. Standard/700 Associates, 01-0587 (La.10/16/01), 798 So.2d 60, 64.
Summary judgment is seldom appropriate for determinations based on subjective facts of intent, motive, malice, good faith, or knowledge. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002, 1006; Biggs v. Cancienne, 12-0187 (La.App. 1 Cir. 9/21/12), 111 So.3d 6, 10; Eskind v. Marcel, 06-0369, 06-1185 (La.App. 1 Cir. 12/28/06), 951 So.2d 289, 292. Nonetheless, Louisiana courts have recognized that, while rare, summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent. Jones, 870 So.2d at 1006-07; see Romano v. Altentaler, 11-0303 (La.App. 1 Cir. 9/14/11), 77 So.3d 282, 284. While the burden of proof on a motion for summary judgment remains with the movant, fraud may be established by circumstantial evidence. LSA-C.C.P. art. 966(C)(2); LSA-C.C. art. 1957.
There is no dispute that the first CSA between the Foundation and Qyntessa and the three subsequent CSAs between LAETC and Qyntessa constituted contracts whereby the parties consented to be bound by certain obligations. See LSA-C.C. arts. | v1906, 1927. Basically, the Foundation and LAETC agreed to pay Qyntessa a certain sum, to be paid with LDED funds, and Qyntessa agreed to provide consulting services for the establishment and operation of the CMF within the LETC. It is also undisputed that 60 percent of the money paid to Qyntessa was not used for the establishment and operation of the CMF, but rather was used for Mr. Moye’s personal benefit. The relevant inquiry is whether the facts indisputably establish that Mr. Moye’s failure to dis *474 close Qyntessa’s 60 percent profit margin was a suppression of the truth made by him with the intention of taking an unjust advantage of the Foundation and LAETC or to cause a loss or inconvenience to them. See LSA-C.C. art. 1953.
To find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information. Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La.1992); Terrebonne Concrete, LLC v. CEC Enterprises, LLC, 11-0072-0079 (La.App. 1 Cir. 8/17/11), 76 So.3d 502, 509, writ denied, 11-2021 (La.11/18/11), 75 So.3d 464. Whether one party owes another a duty to speak depends on the nature of the relationship between the parties and the nature of the information allegedly suppressed. Allstate Insurance Company v. Community Health Center, Inc., No. 08-810, 2014 WL 1689701 (M.D.La. Apr. 29, 2014) (slip opinion), citing Greene, 593 So.2d at 632. It has long been held that the duty to disclose exists where the parties stand in some confidential or fiduciary relation to one another. Bunge Corporation v. GATX Corporation, 557 So.2d 1376, 1383-84 (La.1990).[6] Although not every contractual relationship involves a fiduciary relationship, the defining characteristic of the latter is a special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor. Terrebonne Concrete, LLC, 76 So.3d at 509. A fiduciary cannot further his own interests and enjoy the fruits of an advantage of such a relationship and must make a full disclosure of all material facts surrounding the transaction that might affect the decision of his principal. Id.
[sIn this case, during all but the last few months of the four CSAs, Mr. Moye was a member of the Foundation’s board of directors; thus, he owed the Foundation a fiduciary duty. See LSA-R.S. 12:91(A) and 12:226(A); Terrebonne Concrete, LLC, 76 So.3d at 509. And, although Mr. Moye was not a member of LAETC’s board of directors, the trial court determined that he “had a duty to disclose to the Foundation and LAETC all material facts concerning the terms of the four [CSAs] with Qyntessa.” (Emphasis added.) Given the Foundation’s long-term relationship with Mr. Moye, its status as the sole owner of its subsidiary, LAETC, and Mr. Moye’s status as the sole member of Qyntessa, we agree with the trial court.[7] As a fiduciary, Mr. Moye was prohibited from furthering his own interests at the expense of the Foundation and LAETC. He was required to make a full disclosure of all material facts surrounding the CSAs that might affect the decisions of the Foundation and LAETC. See Terrebonne Concrete, LLC, 76 So.3d at 510.
*475 In conjunction with the CSAs, Mr. Moye submitted Qyntessa’s annual budgets to Mr. Cooper, LAETC’s manager. These budgets included detailed figures for Qyntessa’s start up and operating expenses for the CMF, such as employee salaries; facility expenses; professional services; consultant fees; equipment, lab, and office expenses; and travel and training expenses. None of the budgets listed a salary figure for Mr. Moye (although other Qyntessa employee salaries were listed) or the measure of profit to be taken by Qyntessa. Mr. Moye does not dispute that he personally benefited from 60 percent of the funds paid to Qyntessa under the four CSAs. But, as he continually stated at his deposition, the CSAs did not require that Qyntessa provide this information and Qyntessa was entitled to make a profit. Admittedly, a reasonable salary to Mr. Moye and a reasonable profit to Qyntessa would not have been objectionable under the CSAs. However, we conclude that, had the Foundation and LAETC known that Mr. Moye would use 60 percent of the LDED funds paid to Qyntessa to personally benefit 13himself, rather than to further the establishment and operation of the CMF, then the Foundation and LAETC would not have entered into the CSAs with Qyntessa. See LSA-C.C. art. 1955. It is clear that Mr. Moye’s failure to disclose Qyntessa’s 60 percent profit margin was a suppression of the truth by him with the intention of taking an unjust advantage of the Foundation and LAETC. See LSA-C.C. art. 1953. Thus, despite the rare nature of summary judgments on subjective intent issues, the trial court did not err in finding that Mr. Moye fraudulently enticed the Foundation and LAETC into entering the CSAs nor in granting summary judgment allowing rescission of the CSAs.
The party against whom rescission is granted because of fraud is liable for damages and attorney fees. LSA-C.C. art. 1958. See Stutts v. Melton, 13-0557 (La.10/15/13), 130 So.3d 808, 815.[8] Thus, we will remand this matter to the trial court for a determination of all outstanding issues.
CONCLUSION
For these reasons, we affirm the December 6, 2013 judgment, granting summary judgment in favor of the Foundation and LAETC. This matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to Qyntessa and Steve E. Moye.
AFFIRMED; REMANDED.
CRAIN, J., concurs and assign reason.

. The Foundation and LAETC served as "pass through” entities for the operating funds provided by the LDED and paid to Qyntessa for the CMF. The four CSAs provided payment to *471 Qyntessa as follows: the July 1 through December 31, 2005 CSA between the Foundation and Qyntessa for $600,000; the January 1 through June 30, 2006 CSA between LAETC and Qyntessa for $660,000; the July 1 through June 30, 2007 CSA between LAETC and Qyntessa for $1,680,000; and the July 1 through June 30, 2008 CSA between LAETC and Qyntessa for $2,040,000.

. Qyntessa also filed a third party demand against LSU, the LSU Systems Office and Office of Internal Audit, P. Raymond Lamoni-ca, Dr. Carolyn Hargrave, and Carla Fish-man. The third party demands were later dismissed.

. Qyntessa’s and Mr. Moye’s defamation claim was later dismissed.

. Although this opinion does not address each assignment of error individually, it disposes of all issues raised.

. Louisiana Code of Civil Procedure article 966 was amended in 2013 and again in 2014. The amendments are not implicated in the issues presented in this appeal. See 2013 La. Acts, No. 391, § 1, effective August 1, 2013, and 2014 La. Acts, No. 187, § 1, effective August 1, 2014.

. The confidential relationship is not restricted to any specific association of the parties. While the most frequent illustrations are those of trustee and beneficiary, attorney and client, parent and child, or husband and wife, a confidential relationship also embraces partners and co-partners, principal and agent, master and servant, physician and patient, and generally all persons who are associated by any relation of trust and confidence. (Citation omitted.) Bunge, 557 So.2d at 1384, n. 4.

. Louisiana courts examine whether there is a duty to disclose on a case-by-case basis, and this determination is a legal question. Mose v. Keybank National Association, 464 Fed.Appx. 260 (5 Cir.2012) (unpublished opinion), citing Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1016 (La.1993); Terrebonne Concrete, LLC, 76 So.3d at 509. Even if Mr. Moye did not independently owe LAETC a fiduciary duty, he would arguably still owe LAETC a duty of full disclosure arising from the parties’ relation of confidence. Accord Skannal v. Bamburg, 44,820 (La.App. 2 Cir. 1/27/10), 33 So.3d 227, 238, writ denied 10-0707 (La.5/28/10), 36 So.3d 254.

. A Louisiana limited liability company is a separate legal entity from its members. Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 11-2254 (La.App. 1 Cir. 7/10/12), 97 So.3d 595, 598. Absent proof of fraud, members of a limited liability company generally may not be assessed with personal liability for the debts and obligations of their limited liability companies to third parties. See LSA-R.S. 12:1320; Charming Charlie, Inc., 97 So.3d at 598.